**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **COYOTE LOGISTICS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. _____** |
| | ) | |
| **COYOTE LOGISTICS, INC., ALFONSO TRIGO,** | ) | **JURY DEMANDED** |
| **MARIA ROMERO, and JASON VELASQUEZ** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT

Plaintiff Coyote Logistics, LLC ("Coyote Logistics") hereby files its Original Verified Complaint against Coyote Logistics, Inc., Alfonso Trigo, Maria Romero, and Jason Velasquez (collectively, "Defendants" or "Defendant Coyote"), and would show the Court as follows:

## I.      PRELIMINARY STATEMENT

1.      This is an action for trademark infringement, trademark counterfeiting, and false designation of origin under the Lanham Act, 15 U.S.C. § 1051 *et seq*., and for trademark infringement and unfair competition under Texas statutes and the common law.

2.      Coyote Logistics is a leading third-party logistics provider in the transportation industry. Coyote Logistics offers truckload, less-than-truckload, and intermodal brokerage services and transportation management services to more than 12,000 shippers, from Fortune 100 companies to small businesses, in many industries across North America. Coyote Logistics brokers the transportation of thousands of shipments each day.  Coyote Logistics uses a variety of resources in connection with its brokerage services, including industry website <truckstop.com>.  Coyote Logistics typically has hundreds of listings each day on <truckstop.com>.

3.     Defendants are not and have never been associated with Coyote Logistics, but are nonetheless brazenly passing themselves off as "Coyote Logistics." Defendants have created a Texas corporation called "Coyote Logistics, Inc.," registered themselves with the Federal Motor Carrier Safety Administration as "Coyote Logistics Inc.," and have begun posting shipments on <truckstop.com>.  Defendants do not have an actual business location. Instead, Defendants are using a local UPS store as their official address.  This appears to be calculated to further confuse members of the industry into believing that Defendants are the *real* Coyote Logistics, because the *real* Coyote Logistics is a subsidiary of UPS.  By passing themselves off as Coyote Logistics, Defendants are actively misleading persons in the transportation industry and are trading off of the substantial goodwill that the real Coyote Logistics has earned.   Defendants' actions constitute, *inter alia*, illegal counterfeiting of Coyote Logistics' federally-registered trademarks.

## II.     PARTIES

4.     Plaintiff Coyote Logistics is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business located at 2545 West Diversey Ave., 3rd Floor, Chicago, Illinois 60647.  Coyote Logistics has approximately 17 other offices nationwide, but does not have any locations in Texas. Coyote Logistics was acquired by United Parcel Service of America, Inc. ("UPS") on August 18, 2015.

5.     Defendant Coyote Logistics, Inc. is a Texas corporation. The Certificate of Formation was filed with the Texas Secretary of State on March 21, 2016 by Maria Alexandra Romero. (**Exhibit A**.) The effective date of the Certificate of Formation is April 21, 2016. The Certificate of Formation lists 6119 Greenville Avenue 546, Dallas, Texas 75206 as the "business address of the registered agent and registered office address," as well as the address of the only

Director of the corporation. However, this address is not Defendants' actual place of business; it is a UPS store. (**Exhibit B, Herpich Declaration at ¶ 9**.)

6.     Defendant Maria Alexandra Romero is the organizer and registered agent of Defendant Coyote. (**Exhibit A**.) On information and belief, her home address is 5500 State Hwy 121 #2137 The Colony, TX 75056-4321.

7.     Defendant Alfonso Trigo is the sole Director of Defendant Coyote. (**Exhibit A**.) On information and belief, his home address is either 2140 Medical District Dr., Apt. 1057, Dallas, TX 75235-8083 or 2610 W Colorado Blvd., Apt. C, Dallas, TX 75211-1705.

8.     On information and belief, Defendant Jason Velasquez is an employee and agent of Defendant Coyote and/or a co-conspirator of Defendants Alfonso Trigo and Maria Alexandra Romero. On further information and belief, his home address is 706 Jalisco Plaza, Dallas, Texas 75211.

### III.     JURISDICTION AND VENUE

9.     This is an action for trademark infringement, trademark counterfeiting, unfair competition and false designation of origin arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473 (the "Lanham Act"), and for unfair competition under the laws of the State of Texas.

10.     This Court can exercise personal jurisdiction over Defendants.  Defendant Coyote is a Texas corporation whose sole address appears to be a mailbox at a UPS store in Dallas. Further, Defendants Alfonso Trigo and Jason Velasquez are residents of Dallas, Texas, and Defendant Maria Alexandra Romero is a resident of The Colony, Texas.  All of the Defendants are citizens of the State of Texas and have purposefully availed themselves of the benefits and

protections of Texas law by committing the torts and violations set forth herein in the State of Texas.

11.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and 15 U.S.C. §§ 1116 and 1121.   This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Coyote Logistics' claims for unfair competition and false advertising under the laws of the State of Texas.

12.     Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b) because: (1) three of the four Defendants reside in Dallas County, Texas; (2) the business address of Defendant Coyote is in Dallas County, Texas; and (3) a substantial part of the events or omissions giving rise to the claims occurred and a substantial part of the property that is the subject of the action is situated in this district.

## IV.    FACTS

13.     Founded in 2006, Coyote Logistics is a leading third-party logistics provider. Coyote Logistics offers truckload, less-than-truckload, and intermodal brokerage services and transportation management services to more than 12,000 shippers, from Fortune 100 companies to small businesses, in many industries across North America. Coyote Logistics arranges the transportation of thousands of shipments each day.

14.     Numerous third party sources have recognized Coyote Logistics' success in the logistics space. For the past seven years, Coyote Logistics has been named by Inc. Magazine to its "Inc. 5000" list of the fastest-growing private companies in America; for the past three years, Coyote Logistics has been featured on the Selling Power Magazine's list of the 50 Best Companies to Sell For; in 2013, Coyote Logistics was named to Forbes's list of America's Most

Promising Companies; in 2014, Coyote Logistics was named to Global Trade Magazine's list of 15 Leading 3PLs to Watch; in 2015, Coyote Logistics was recognized by Inbound Logistics as a 2015 Top 100 3PL Provider.

15.     Coyote Logistics has extensively promoted and advertised its goods and services offered under the COYOTE mark, by itself or with other word and/or design elements (collectively, the "COYOTE Marks") in trade publications, on the Internet, in email communications, on social media, in direct marketing materials, and among other media outlets. In each of the years 2014 and 2015, Coyote Logistics spent over $500,000 on advertising and direct marketing.

16.     Coyote Logistics holds a number of federal trademark registrations. In particular, Coyote Logistics owns U.S. Reg. No. 4221250 for the stylized COYOTE mark, Reg. No. 3523958 of the COYOTE LOGISTICS mark, and Reg. No. 4139563 of the COYOTEWEB mark, all of which are registered in connection with logistics, transportation, delivery, and related services in International Classes 35 and 39. Collectively, these registrations are referred to as the "COYOTE Registrations" and the marks are referred to as the "COYOTE Marks." True and correct copies of the COYOTE Registrations are annexed hereto as **Exhibits C-E**.

17.     The COYOTE Registrations are valid and subsisting, and provide conclusive evidence of the right of Coyote Logistics to use the COYOTE marks in commerce.

18.     U.S. Trademark Reg. No. 3,523,958 for COYOTE LOGISTICS has reached incontestable status pursuant to 15 U.S.C. 1115(b).

19.     As a result of Coyote Logistics' longstanding use and substantial marketing, advertising, and promotional efforts in connection with the COYOTE Marks, the consuming public and the trade recognizes and associates the COYOTE Marks with Coyote Logistics.

20.     Coyote Logistics brokers shipments. Typically, a person wanting to ship product (for example, a truckload of goods) would contact Coyote Logistics. The person shipping the product would provide information about the shipment, such as the weight, pickup location, destination, and delivery time. Coyote Logistics would then make use of its knowledge, experience, proprietary technology and goodwill to find a carrier willing to transport the goods. Coyote Logistics would typically collect the shipping costs from the shipper, and then pay the carrier, while keeping a portion of the payment as consideration for its brokerage services.

21.     Coyote Logistics uses a variety of resources in connection with its brokerage services. One resource that Coyote Logistics uses is a website called <truckstop.com>. Coyote Logistics typically has several hundred listings each day on <truckstop.com>.

22.     Defendants are providing counterfeit brokerage services by passing themselves off as Coyote Logistics.

23.     Defendants registered as a Texas corporation under the name "Coyote Logistics, Inc." effective April 21, 2016. (**Exhibit A**.)  Defendants provided only a UPS store mailbox as their place of business. (**Exhibit F**.)

24.     On information and belief, Defendant Maria Romero signed the Certificate of Formation for Defendant Coyote with full knowledge of the prior rights of Coyote Logistics. On further information and belief, Defendant Maria Romero signed the Certificate of Formation with knowledge of Defendants' intent to deceive persons in the transportation business and with intent to trade off of Coyote Logistics' trade name.

25.     On information and belief, Defendant Alfonso Trigo authorized the Certificate of Formation for Defendant Coyote with full knowledge of the prior rights of Coyote Logistics.  On further information and belief, Defendant Alfonso Trigo authorized the Certificate of Formation

with knowledge of Defendants' intent to deceive persons in the transportation business and with intent to trade off of Coyote Logistics' trade name.

26.     Defendants registered with the Federal Motor Carrier Safety Administration ("FMCSA") as "Coyote Logistics Inc." on April 4, 2016. (**Exhibit G**.) Defendants' FMCSA registration is nearly identical to the genuine Coyote Logistics' FMCSA registration. (**Exhibit H**.)

27.     On information and belief, the individual Defendants directed and approved the filling of an FMCSA registration nearly identical to Coyote Logistics' registration.

28.     Defendant Coyote has begun posting shipments as "Coyote Logistics" on at least the website <truckstop.com>, alongside the real Coyote Logistics' own postings. (**Exhibit B**, **Herpich Decl. ¶ 10**.)  On information and belief, these actions were all conducted and approved by the individual Defendants.

29.     Defendants are not authorized to provide any goods or services in connection with the COYOTE Marks.

30.     Defendants are not, and have never been, affiliated with Coyote Logistics.

31.     Upon information and belief, Defendants were and are aware of Coyote Logistics' prior, extensive use of the COYOTE marks, and of Coyote Logistics' extensive goodwill associated with those marks.

32.     Upon information and belief, Defendants were and are aware of Coyote Logistics' practice of posing hundreds of potential shipments each day on the website <truckstop.com>.

33.     Upon information and belief, Defendants have knowingly, intentionally, and/or recklessly offered for sale and sold transportation services in connection with the COYOTE Marks.

34.     As a result, members of the transportation industry, as well as regulatory bodies, governmental entities, manufacturers, suppliers, retailers, vendors, trade groups, and industry associations that look for and rely on the COYOTE Marks are likely to believe that Defendants' services are affiliated with Coyote Logistics when in fact they are not.

35.     Defendants' use of the COYOTE Marks in connection transportation services is likely to cause confusion, or to cause mistake or to deceive.

36.     Upon information and belief, Defendants' conduct was undertaken willfully, intentionally, and in reckless disregard of Coyote Logistics' rights in the COYOTE Marks.

37.     Upon information and belief, Defendants have engaged in similar confusing and deceptive business practices in the past. For example, Defendant Jason Velasquez holds himself out as "President and CEO of National Wide Logistics." (**Exhibit I**.) On information and belief, this is a deliberate attempt to create confusion with a company called Nationwide Logistics. On further information and belief, Mr. Velasquez holds himself out as an employee of "Prudential Financial Lending" which, on further information and belief, does not exist.

38.     Upon information and belief, the individual Defendants have conspired to form Defendant Coyote without obtaining insurance, without adequately funding the corporation, and without any intent to operate out of an actual place of business.

39.     Upon information and belief, the individual Defendants have personally directed and controlled the counterfeiting and infringement detailed herein.

## V.    CAUSES OF ACTION

### COUNT ONE - FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114(1))

40.    Coyote Logistics repeats and realleges the allegations above as if fully set forth herein.

41.    Defendants have been using copies or simulations of the COYOTE Marks that are identical to or substantially indistinguishable from the COYOTE Marks in appearance, sound, meaning, and commercial impression.

42.    Defendants' use thereof is likely to cause confusion, mistake, and deception as to Defendants' services. The transportation industry and public are likely to be confused and deceived as to whether Defendants' services are in some way connected with, licensed, authorized, certified by, or affiliated with Coyote Logistics.

43.    Defendants' actions will irreparably injure and damage Coyote Logistics and the goodwill and reputation symbolized by the COYOTE Marks.

44.    Likelihood of confusion is enhanced by the fact that the Defendants are advertising their counterfeit services in exactly the same channels of trade that Coyote Logistics uses to conduct its business.

45.    Defendants are not affiliated or connected with Coyote Logistics and have not been endorsed or sponsored by Coyote Logistics, nor has Coyote Logistics approved any of Defendants' counterfeit services.

46.    Defendants have never obtained the permission of Coyote Logistics to use the COYOTE Marks.

47.    The COYOTE Registrations set out above provide, at the very least, constructive notice to Defendants of the rights of Coyote Logistics in and to the COYOTE Marks.

48.     Defendants' production, offering for sale, and sale of the counterfeit services is likely to cause confusion, mistake, or deception among relevant shippers and carriers of these services, in violation of the Lanham Act, including but not limited to 15 U.S.C. § 1114.

49.     Relevant consumers are likely to purchase Defendants' counterfeit services believing Defendants to have been certified or approved by Coyote Logistics, thereby resulting in a loss of goodwill and economic harm to Coyote Logistics.

50.     Upon information and belief, Defendants intentionally have produced, offered for sale, and sold the counterfeit services so as to create consumer confusion and traffic off of Coyote Logistics' reputation and goodwill.

51.     On information and belief, Defendants have derived unlawful gains and profits from their production, offering for sale, and sale of the counterfeit services.

52.     The goodwill of Coyote Logistics' business under the COYOTE Marks is of great value, and Coyote Logistics will suffer irreparable harm should Defendants' infringement be allowed to continue to the detriment of the trade reputation and goodwill of Coyote Logistics for which damage Coyote Logistics cannot be adequately compensated at law.

53.     Coyote Logistics has no control over the counterfeit services sold by Defendants. Thus, the value of the COYOTE Marks is subject to damage by an entity it cannot control.

54.     Unless Defendants are enjoined by this Court, Coyote Logistics will continue to suffer irreparable harm and injury to its goodwill and reputation.

55.     Upon information and belief, Defendants have engaged in acts of infringement, with knowledge of Coyote Logistics' exclusive rights in and to the COYOTE Marks, and Defendants continue in such acts of intentional infringement, thus entitling Coyote Logistics to an award of treble damages, disgorgement of Defendants' profits, and attorneys' fees and costs

in bringing and maintaining this action, pursuant to Section 35(b) of the Lanham Act, 15 U.S.C.

§ 1117(b).

**COUNT TWO - FEDERAL TRADEMARK COUNTERFEITING**
**(15 U.S.C. § 1114)**

56.     Coyote Logistics repeats and realleges the allegations above as if fully set forth

herein.

57.     Coyote Logistics owns valid and, in one instance, incontestable, United States

Trademark Registrations for its COYOTE Marks, as set out above.

58.     Well before any of Defendants' actions complained of herein were committed,

Coyote Logistics had continuously used the COYOTE Marks throughout the United States in

connection with its transportation services.

59.     Defendants use and display a non-genuine version of the COYOTE Marks that is

identical to, or substantially indistinguishable from, the COYOTE Marks in connection with their

transportation services.

60.     Coyote Logistics did not authorize Defendants' use of the COYOTE Marks, and

such unauthorized use of the COYOTE Marks is likely to confuse relevant consumers into

falsely believing that Defendants' counterfeit services are authorized or certified by Coyote

Logistics when, in fact, they are not.

61.     Defendants' production, offering for sale, and sale of the counterfeit services

without consent from Coyote Logistics was and is a willful and intentional infringement of

Coyote Logistics' registered COYOTE Marks.

62.     Defendants have profited from their acts of infringement. Coyote Logistics is

entitled to recover Defendants' profits arising from the infringement, any damages sustained by

Coyote Logistics arising from said infringement, as well as the costs of this action. Coyote

Logistics also is entitled to an enhanced award of profits and/or damages to fully and adequately compensate it for Defendants' infringement. At its election, Coyote Logistics also is entitled to statutory damages.

63.     Defendants have caused and, unless enjoined by this Court, will continue to cause irreparable injury to Coyote Logistics that is not fully compensable in monetary damages. Coyote Logistics is therefore entitled to a preliminary and permanent injunction enjoining and restraining Defendants from use of the COYOTE Marks or any other mark that is confusingly similar to the COYOTE Marks and the Coyote Logistics Service Mark.

### COUNT THREE - UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A))

64.     Coyote Logistics repeats and realleges the allegations above as if fully set forth herein.

65.     The counterfeit services sold and offered for sale by Defendants in connection with counterfeit versions of the COYOTE Marks, and copies of the COYOTE Marks, are of the same general nature and type as the COYOTE Marks sold and offered for sale by Coyote Logistics and, as such, Defendants' use is likely to cause confusion among the relevant consumers.

66.     By misappropriating and using the COYOTE Marks and trade name, Defendants misrepresent and falsely describe to the general purchasing public the origin and source of the counterfeit services and create a likelihood of confusion by ultimate purchasers as to the source, sponsorship or approval of the counterfeit services and creates a likelihood that consumers will mistakenly believe that services bearing the counterfeit marks are associated or affiliated with Coyote Logistics.

67.    Defendants' unlawful, unauthorized and unlicensed offer for sale and/or sale of the counterfeit services creates express and implied representations that the counterfeit services were created, authorized, sponsored, or approved by Coyote Logistics, all to Defendants' profit and Coyote Logistics' great damage and injury.

68.    Defendants' aforesaid acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in that Defendants' use of the COYOTE Marks in connection with their goods and services in interstate commerce constitutes a false designation of origin and unfair competition.

69.    Coyote Logistics has no adequate remedy at law and, if Defendants' activities are not enjoined, Coyote Logistics will continue to suffer irreparable harm and injury to its goodwill and reputation.

70.    Defendants' acts of unfair competition and false designation of origin have caused great harm and damage to Coyote Logistics. The amount of these damages is not yet determined.  Pursuant to 15 U.S.C. § 1117(a), Coyote Logistics is entitled to and seeks actual damages, Defendants' profits, and costs of this action and such additional relief as may be deemed appropriate and awarded by this Court.  Defendants' conduct was exceptional and intentional and, as such, Coyote Logistics is entitled to treble its actual damages pursuant to 15 U.S.C. § 1117(b).

71.    On information and belief, Defendants' acts of unfair competition and false designation of origin have been and continue to be deliberate and willful and warrant an award of enhanced damages. As such, Coyote Logistics is entitled to and seeks a finding that this case is exceptional and warrants an award of attorneys' fees pursuant to 15 U.S.C.§ 1117(a).

## COUNT FOUR - FALSE ASSOCIATION UNDER SECTION 43(A) OF THE LANHAM ACT, 15 U.S.C. §1125(A)

72.     Coyote Logistics repeats and realleges the allegations above as if fully set forth herein.

73.     Defendants use and display a non-genuine version of the COYOTE Marks that is identical to, or substantially indistinguishable from, the COYOTE Marks in connection with their transportation services.

74.     Coyote Logistics did not authorize Defendants' use of the COYOTE Marks, and such unauthorized use of the COYOTE Marks is likely to confuse relevant consumers into falsely believing that Defendants' counterfeit services are authorized or certified by Coyote Logistics when, in fact, they are not.

75.     Defendants' production, offering for sale, and sale of the counterfeit services without consent from Coyote Logistics was and is a willful and intentional infringement of Coyote Logistics' registered COYOTE Marks.

76.     The false representations were made in interstate commerce and in commercial advertising misrepresenting the nature, characteristics and qualities of Coyote Logistics commercial activities.

77.     By misappropriating and using the COYOTE Marks and trade name, Defendants misrepresent and falsely describe to the general purchasing public the origin and source of the counterfeit services and create a likelihood of confusion by ultimate purchasers as to the source, sponsorship or approval of the counterfeit services and creates a likelihood that consumers will mistakenly believe that services bearing the counterfeit marks are associated or affiliated with Coyote Logistics.

78.     Defendants' unlawful, unauthorized and unlicensed offer for sale and/or sale of the counterfeit services creates express and implied representations that the counterfeit services were created, authorized, sponsored, or approved by Coyote Logistics, all to Defendants' profit and Coyote Logistics' great damage and injury.

79.     The foregoing acts of Defendants deceived, or had the capacity to deceive, the general purchasing public as to the origin and the source of the counterfeit services.

80.     Defendants' deception was material in that creates express and implied representations that the counterfeit services were created, authorized, sponsored, or approved by Coyote Logistics, all to Defendants' profit and Coyote Logistics' great damage and injury.

81.     Defendants' actions constitute false association in violation of §43(a) of the Lanham Act.

82.     Defendants' intentional misrepresentations and deception have caused irreparable injury to Coyote Logistics, and will continue to harm Coyote Logistics unless enjoined.

83.     Defendants' actions have been willful and deliberate, justifying an award of attorneys' fees.

## **COUNT FIVE - TEXAS TRADEMARK INFRINGMENT & DILUTION (TEX. BUS. & COMM. CODE SECTION 16.102, 16.103 & 16.104)**

84.     Coyote Logistics repeats and realleges the allegations above as if fully set forth herein.

85.     Coyote Logistics is the owner of the COYOTE Marks, and has built up valuable goodwill in the COYOTE Marks, including through its use of the COYOTE Marks in commerce in Texas.

86.     Defendants' intentional and blatant infringement of Coyote Logistics' federally registered marks constitutes trademark infringement and dilution under Texas Business and Commerce Code Sections 16.102, 16.103 and 16.104.

87.     Defendants infringed the COYOTE Marks with knowledge and intent to cause confusion, mistake or to deceive.

88.     As a result of Defendants' acts, Coyote Logistics has suffered actual damages. The amount of these damages is not yet determined. Coyote Logistics seeks actual damages, Defendants' profits, and such additional relief as may be deemed appropriate and awarded by this Court. In addition, since Defendants acted with actual knowledge of the COYOTE Marks and/or acted in bad faith, Coyote Logistics is entitled to treble damages and attorney's fees.

89.     Defendants' conduct is aggravated by that kind of willfulness, wantonness and malice for which Texas law allows the imposition of exemplary damages. That is, Defendants have the specific intent to cause substantial injury or harm to Coyote Logistics.

90.     Defendants' acts have caused and will continue to cause Coyote Logistics irreparable harm unless enjoined by this Court. Coyote Logistics has no adequate remedy at law.

91.     As a direct and proximate result of Defendant's conduct, Coyote Logistics is entitled to injunctive relief and damages (a) not to exceed three times the amount of economic damages suffered by Coyote Logistics plus the profits made by Defendants, and (b) an award of reasonable attorney's fees to the prevailing party under Tex. Bus. & Com. Code §16.104 (c).

## COUNT SIX - COMMON LAW TRADEMARK INFRINGMENT

92.     Coyote Logistics repeats and realleges the allegations above as if fully set forth herein.

93.     The aforementioned acts of Defendants constitute trademark infringement in violation of the common law of the State of Texas.

94.     Defendants' acts further constitute a malicious, fraudulent, or grossly negligent attempt to profit from the COYOTE Marks in violation of its trademark rights.

95.     Defendants' use of the COYOTE Marks is likely to cause and has caused confusion as to the source of origin of the services to the detriment of and resulting in damages to Coyote Logistics.

96.     Defendants' acts of common law trademark infringement have caused great harm and damage to Coyote Logistics. The amount of these damages is not yet determined. Coyote Logistics seeks actual damages, exemplary damages, and such additional relief as may be deemed appropriate and awarded by this Court.

97.     Based upon information and belief, Defendants will continue their willful acts of trademark infringement unless enjoined by this Court. Coyote Logistics seeks preliminary and permanent injunctive relief against further acts of trademark infringement by Defendants.

## COUNT SEVEN – COMMON LAW UNFAIR COMPETITION AND MISAPPROPRIATION

98.     Coyote Logistics repeats and realleges the allegations above as if fully set forth herein.

99.     Defendants' unauthorized use of the COYOTE Marks, as alleged above, constitutes unfair competition and Defendants have gained a special advantage in the market by using the COYOTE Marks, for which Defendant has been burdened with little to no expense.

100.    Defendants' use of the COYOTE Marks is likely to cause confusion, to cause mistake, or to deceive the relevant consuming public as to the source of the goods or the

affiliation, connection, or association of Defendants with Coyote Logistics in violation of Texas common law prohibiting unfair competition.

101.    Defendants' acts of common law unfair competition have caused great harm and damage to Coyote Logistics.  The amount of these damages is not yet determined.

102.    Upon information and belief, Defendants will continue their willful acts of unfair competition unless enjoined by this Court.  Coyote Logistics seeks preliminary and permanent injunctive relief against further acts of unfair competition by Defendant.

## VI.    ATTORNEYS' FEES

103.    Coyote Logistics repeats and realleges the preceding paragraphs as if fully set forth herein.

104.    Because of Defendants' misconduct, Coyote Logistics has been forced to retain counsel to prosecute this action and has agreed to pay a reasonable and necessary fee to counsel in connection the prosecution of this action. Coyote Logistics seeks to recover its attorneys' fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a)(3) and pursuant to Texas Business and Commerce Code Sections 16.104.

## VII.    CONDITIONS PRECEDENT

105.    All conditions precedent to this action and Coyote Logistics' recovery have occurred, have been performed, or have been waived.

## VIII.    INJUNCTIVE RELIEF

106.    As more fully set forth in Coyote Logistics' Application for Temporary Restraining Order, Expedited Discovery, and Order to Show Cause for Preliminary Injunction and Brief in Support, Coyote Logistics is entitled to injunctive relief.  Specifically, there is a

substantial likelihood that Coyote Logistics will succeed on the merits of its Lanham Act claims and Texas state law claims.

107.    Further, there is a substantial threat that Coyote Logistics will be irreparably injured as a result of Defendants' continued use of Coyote Logistics' Marks.  Coyote Logistics' threatened injury outweighs the threatened injury to Defendants, and the granting of injunctive relief will not disserve the public interest.

108.    Coyote Logistics specifically seeks the remedy of immediate production of documents demonstrating to whom Defendants provided their counterfeit services as part of the injunctive relief sought herein.

## IX.    RELIEF REQUESTED

Upon final hearing, Coyote Logistics respectfully requests that this Court grant it judgment as follows:

1.    That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through or under them be temporarily and preliminarily enjoined and restrained for the pendency of this action and, thereafter, permanently:

(a)    from using the COYOTE Marks in any manner;

(b)    from passing off, inducing, or enabling others to sell or pass off any service as services of Coyote Logistics;

(c)    from committing any acts calculated to cause purchasers to believe that Defendants' services are under the control and supervision of Coyote Logistics, or sponsored or approved by, or connected with, or guaranteed by, or produced under the control and supervision of Coyote Logistics;

(d)     from further infringing all of the COYOTE Marks and damaging Coyote Logistics' goodwill;

(e)     from otherwise competing unfairly with Coyote Logistics in any manner; and

(f)     from operating any website or email address associated with, using, linking to, or referring to the COYOTE Marks.

2.     That Defendants be required upon service of this Complaint to immediately supply Coyote Logistics with a complete list of entities to whom they provided services in connection with the counterfeit COYOTE Marks.

3.     That Defendants be required upon service of this Complaint to immediately deliver up to Coyote Logistics any and all emails, invoices, banking records, and other business records relating to the provision of any services by Defendants in connection with the COYOTE Marks.

4.     That Defendants account for and pay over to Coyote Logistics profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for each infringement of the COYOTE Marks be increased by a sum not exceeding three times the amount thereof as provided by law.

5.     That Coyote Logistics be awarded actual damages of at least $75,000.00 and punitive damages of at least $100,000.00.

6.     That Coyote Logistics be awarded statutory damages of up to $2,000,000 per counterfeited mark per product type for Defendants' willful counterfeiting of the COYOTE Marks.

     7.     That Coyote Logistics be awarded reasonable attorneys' fees and have such

other and further relief as the Court may deem equitable including, but not limited to, any relief

set forth under Sections 34-39 of the Lanham Act and/or 15 U.S.C. § 1117(a)(3).

## X.     JURY DEMAND

    Coyote Logistics demands a trial by jury as to all issues so triable.

Dated: July 22, 2016

                       Respectfully submitted,

                       /s/ Bina B. Palnitkar
                       Bina B. Palnitkar
                       (SBN: 24070378)
                       **GREENBERG TRAURIG, LLP**
                       2200 Ross Avenue, Suite 5200
                       Dallas, Texas 75201
                       Telephone: (214) 665-3600
                       Facsimile: (214) 665-3601

                       Cameron M. Nelson
                       *Pro hac vice application forthcoming*
                       **GREENBERG TRAURIG, LLP**
                       77 West Wacker Drive, Suite 3100
                       Chicago, IL 60601
                       Telephone: (312) 456-6590
                       Facsimile: (312) 899-0360

                       ***ATTORNEYS FOR PLAINTIFF***
                       ***COYOTE LOGISTICS, LLC***

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COYOTE LOGISTICS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. _____ |
| | ) | |
| COYOTE LOGISTICS INC., ALFONSO | ) | JURY DEMANDED |
| TRIGO, MARIA ROMERO, and JASON | ) | |
| VELASQUEZ | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFICATION

STATE OF ILLINOIS      )
                       )
COUNTY OF COOK         )

Before me, the undersigned Notary Public, on this day personally appeared Andrew

Herpich, who, after being duly sworn, testified:

"My name is Andrew Herpich, and I am Assistant Vice President of Carrier Sales and Operations at Coyote Logistics, LLC. I am of legal age and competent to make this statement. I have read the factual statements in Coyote Logistics, LLC's Complaint, Application for Temporary Restraining Order, Order to Show Cause for Preliminary Injunction, and Emergency Motion for Expedited Discovery. The factual statements are within my personal knowledge and are true and correct."

_____
Andrew Herpich

SUBSCRIBED TO AND SWORN TO BEFORE ME on July 21, 2016.

_____
Notary Public in and for
The State of Illinois

My Commission expires:

```
MICHAEL SCHWARTZ
Official Seal
Notary Public - State of Illinois
My Commission Expires Dec 21, 2019
```

ATL 21350643v1